UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| P.A., on behalf of minor child, A.A., et al. | * | CIVIL ACTION NO. 23-2228 |
| | * | |
| VERSUS | * | SECTION: "O"(1) |
| | * | |
| DORIS VOITIER, et al. | * | JUDGE BRANDON S. LONG |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************* | * | |

ORDER AND REASONS

Before the Court is Plaintiffs' Second Motion to Compel Discovery. (Rec. Doc. 73). This Order and Reasons addresses the relevance and proportionality issues raised therein. For the following reasons, the Motion is GRANTED in part and DENIED in part as to Requests for Production 2, 29, 30-33, 36-37, and 39. The privilege issues shall be addressed in a separate Order and Reasons.

Background

Plaintiffs in this lawsuit are five students aged 15 to 17[1] attending public school in St. Bernard Parish. They each allege that they are disabled under the Americans with Disabilities Act, Section 504 (three have Attention-Deficit Hyperactivity Disorder and other mental health disorders, one has ADHD and dyslexia, and one is described as having a "suspected dyslexia diagnosis"). They challenge the St. Bernard Parish School Board's practice of sending expelled students in grades 6 through 12 to C.F. Rowley Alternative School ("Rowley"). They complain that expulsions to Rowley are not reported to the state for accountability monitoring and that students are not provided with due process prior to serving their expulsion. They allege that once placed at Rowley, students are denied access to education—they spend most of their time

---

[1] Since the filing of suit, plaintiff C.C. has turned 18. (Rec. Doc. 76).

completing computer Edgenuity courses with little to no live instruction. There are only six teachers for the entire high school population and none of them teach history or biology. Rowley students do not have access to courses that could earn college credit or access to scholarships – both opportunities provided to students at Chalmette High School. They are also barred from participating in district-wide school-sponsored and extra-curricular activities. Plaintiffs allege that St. Bernard Parish School Board Disciplinary Policies and Practices as to Rowley violate students' rights to notice and hearing prior to long-term disciplinary expulsions. Plaintiffs allege that although the student population in the St. Bernard Parish School Board's system is 2/3 white, the population at Rowley is majority Black.

Plaintiffs also allege that the rights of students with disabilities are being violated because students with emotional and behavioral disabilities are placed at Rowley purportedly because they require a "smaller setting," but once there they do not receive the academic and social-emotional supports their disabilities require. They allege further that students with disabilities placed at Rowley for disciplinary reasons can only exit Rowley if they meet the exit criteria, but the criteria are not modified to account for their disabilities.

The plaintiffs here are proceeding under pseudonyms. Plaintiff A.A. was assigned to Rowley for the latter portion of the 2021-2022 school year and, after returning to Chalmette High School for the 2022-2023 school year, he was again assigned to Rowley in February 2023.  On that day, he was arrested for a fight on campus. Representatives of the Board appeared at a juvenile delinquency hearing to advocate for A.A.'s exclusion from Chalmette High School as a condition of his probation. Among other things, A.A. alleges that the 2023 assignment was retaliatory.

Plaintiff B.B. was assigned to Rowley beginning in sixth grade in 2018. She started high school at Chalmette High School, but at the beginning of the 2022 school year when she was in

tenth grade, she was assigned to Rowley following an incident of using mace when several male students began verbally assaulting and threatening her. Following the administrative hearing, which resulted in dismissal of her claims of disability discrimination, she and the School Board reached a preliminary settlement in May 2023—but she alleges she has not received the 400 hours of tutoring promised therein.

Plaintiff C.C. began attending Chalmette High School in August 2022. Following an altercation in September 2023, she was assigned to Rowley for the remainder of the school year.

Plaintiff D.D. was first referred to Rowley when he was in seventh grade. In September 2023, when he began ninth grade, he was not permitted to return to Chalmette High School. His mother withdrew him and enrolled him in a paid homeschool program. In January and February 2024, they were told he would have to go to Rowley if he re-enrolled in public school. They retained counsel, and in February 2024, D.D. was re-enrolled at Chalmette.

Plaintiff E.E. is currently placed at Chalmette but she was involuntarily placed at Rowley on August 5, 2022, after being accused of using marijuana on campus during summer school.

Plaintiffs assert claims against the St. Bernard Parish School Board and Doris Voitier in her official capacity as superintendent for the St. Bernard Parish Public Schools for discrimination under the ADA, for discrimination and retaliation in violation of Section 504 of the Rehabilitation Act of 1973, for violation of their procedural due process rights under the United States and Louisiana Constitutions, for violation of disciplinary safeguards required by state law, for violation of the Louisiana Human Rights Act's prohibitions against disability discrimination, and as to B.B., an appeal of the dismissal of her administrative claim due to lack of jurisdiction.

Plaintiffs seek damages as well as declarative and injunctive relief. They seek an order that placement at Rowley is tantamount to expulsion and that defendants have violated and are

violating plaintiffs' rights. They also seek an order enjoining defendants from future violations and requiring them to develop procedures to prevent discriminatory placement in the alternative school program and to provide plaintiffs the opportunity to participate in and benefit from the same educational and extracurricular services afforded to non-disabled peers, provide plaintiffs with reasonable accommodations for their disability related needs, and provide them with educational programs and services in the most integrated setting as required by Section 504 and the ADA. Trial is set to begin on April 7, 2025. The discovery deadline is January 22, 2025.

The present discovery dispute concerns the plaintiffs' discovery requests to the School Board. A separate Order and Reasons to be issued by the Court addresses the privilege issues raised by the plaintiffs. This memorandum addresses issues concerning the scope of discovery.

<u>Law and Analysis</u>

1. *Scope of Discovery*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." <u>Id.</u> The Rule requires consideration of the following factors in assessing proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." <u>Id.</u>

Prior to the 2000 amendments, the Federal Rules provided for discovery of nonprivileged matter "relevant to the subject matter involved in the pending actions." The 2000 amendments deleted the quoted language, limiting the scope of discovery to nonprivileged matters "relevant to

the claim or defense of any party" and allowing for discovery "of any matter relevant to the subject matter involved in the action" only upon a showing of good cause. Fed. R. Civ. Proc. 26; see XTO Energy, Inc. v. ATD, LLC, No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at *12–13 (D.N.M. Apr. 1, 2016) (analyzing the progressive rule changes); see also 8 Alan Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 2008 (3d ed.). The change "signal[ed] to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signal[ed] to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Fed. R. Civ. Proc. 26 advisory committee's notes to 2000 amendment.  The committee explained that the parties should "focus on the actual claims and defenses involved in the action," but that a variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action." Id. Following the 2015 amendments to the Rules (which removed reference "to the subject matter involved in the action" entirely), courts have concluded that "[r]elevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense.'" XTO Energy, Inc. v. ATD, LLC, No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at *17 (D.N.M. Apr. 1, 2016) (quoting State Farm Mut. Auto. Ins. Co. v. Fayda, No. 14CIV9792WHPJCF, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), aff'd, No. 14CV9792, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016)); Walker v. H & M Henner & Mauritz, L.P., No. 16 CIV. 3818 (JLC), 2016 WL 4742334, at *2 (S.D.N.Y. Sept. 12, 2016).

While construing relevance broadly, this Court is anchored by the parties' pleadings. "To implement the rule that discovery must be relevant to the claim or defense of any party, district courts have examined the relationship of the requested discovery and the facts it is intended to uncover to the specific claims and defenses raised by the parties." Thibault v. BellSouth

Telecommunications, Inc., No. CIV.A. 07-200, 2008 WL 4808893, at *2 (E.D. La. Oct. 30, 2008)
(M.J. Wilkinson).

    2.   *Discovery at Issue*

        a.   *Responsive documents withheld but not identified.*

Plaintiffs complain that defendants have withheld documents responsive to Request for
Production 29 without identifying them. This appears to be based on the Board's objection to the
request as overbroad and vague. However, the Board points out that it has already explained to
plaintiffs in correspondence "[w]e provided responsive documents for subparts a and b, but
objected to the remaining subparts." Ex. 8, ECF No. 73-7, at 30.

In that same correspondence, the Board explained that their production in response to RFP
29 was based on staff reviewing and pulling responsive emails. It noted that it also produced emails
in response to RFP 2 using search terms (apparently some of these would also be responsive to
RFP 29).

The Board is not actively withholding any documents to RFP 29, except as to the
objections, to be addressed below. IT IS ORDERED that identification of documents withheld in
response to RFP 29 will not be required.

        b.   *Request for Production 2 and 29 – Communications Related to Plaintiffs*

Request for Production 2 seeks "all documents and communications related to" the
plaintiffs. Plaintiffs previously sought to compel a response to this request, focusing on
communications. The Court ordered the parties to meet and confer to narrow the request using
search terms. Some production has been made, but plaintiffs contend defendants' response remains
deficient. Request for Production 29 seeks subcategories of communications among staff or
between staff and plaintiffs' parents related to the plaintiffs, specifically: (c) relating to referral of

Plaintiffs for an evaluation to determine eligibility for a 504 Plan or IEP, (d) relating to plaintiffs' Daily Trackers for PBIS at Rowley, (e) related to plaintiffs' disciplinary referrals or incidents, (f) relating to the development or implementation of an FBA or BIP for plaintiffs, and (g) communications between staff and law enforcement relating to plaintiffs. These subparts have not yet been addressed by the Court.

With regard to RFP 2, defendants agreed to produce emails within 30 days of referral for each plaintiff A.A., B.B., and C.C.,[2] but not as to D.D. and E.E. because the Court has already held that claims related to the referral of D.D. and E.E. to Rowley have prescribed.[3] Plaintiffs insist that these communications remain relevant to their policy and practice claims. Defendants respond that plaintiffs have failed to establish the relevance of their request. They submit that processing the request for communications concerning the referrals of A.A., B.B., and C.C., has been burdensome and they argue that they should not be required to undertake this burden for claims that have prescribed. They explain the burden has involved numerous conferences with plaintiffs' counsel, running various searches and "hit reports" requested by the plaintiffs that yielded results from hundreds to over 100,000 emails that took in house staff most of a workweek to complete,[4] and the Board's review and redaction of the emails for production. They point out that plaintiffs have acknowledged a "great many" of the emails produced are irrelevant anyway. Plaintiffs deny this.

As to the D.D. and E.E. referral emails, the Board has not addressed why the requested emails would be irrelevant to the policy and practice claims as plaintiffs contend. One of the

---

[2] A chart submitted by plaintiffs with their motion indicates that defendants have produced communications 30 days prior to the referral dates through approximately 15 days after. Ex. 12, ECF No. 73-8, at 3. As noted, the Board arrived at this production set by a manual review and by searching terms the parties agreed to.

[3] In granting plaintiffs leave to amend their complaint to join D.D. and E.E. as plaintiffs, the Court held that the claims of D.D. and E.E. more than one year prior to the motion for leave to amend (including their referrals to Rowley) had prescribed. ECF No. 39, at 12.

[4] Plaintiffs' memorandum indicates that the first search for exit period emails yielded 7,000 hits, and another hit report yielded 11,000 emails. After agreeing to a custodian list, plaintiffs say the number of emails came down to 2,917 (apparently for all five plaintiffs).

allegations in this case is that the Board has a practice of coercing parents to waive their due process rights and accept a placement at Rowley in lieu of a disciplinary hearing that could result in an "expulsion" on the students' Record. <u>See</u> Complaint, Par. 60. However, plaintiffs only allege that A.A. and B.B. were offered waivers, and referral emails as to A.A. and B.B. have already been produced. Referral related emails as to D.D. and E.E. will not shed light on this claim. Plaintiffs also allege a policy and practice of placing students at Rowley through methods that discriminate against them because of their disability. The Court finds the emails requested may bear on these alleged practices.

The Board objects on the basis of burdensomeness. But at least some of the burden it cites results from the time spent by the parties as they negotiated the search terms and time periods that resulted in the production of referral emails as to A.A., B.B., and C.C. If the Board uses the already agreed to time period and analogous custodians and search terms, the burden of production for D.D. and E.E. will be reduced. The Court acknowledges the burden is still great, but finds that the importance of some additional evidence concerning the alleged pattern and practice of discriminatorily referring disabled students to Rowley outweighs that burden. Importantly, while a request for all emails pertaining to the referral of every single student to Rowley would result in an undue burden, expanding the current production of emails to include D.D. and E.E. provides the plaintiffs with additional evidence of any pattern that may exist—to the extent such pattern would be reflected in email correspondence—while avoiding the resources that would be required by both sides for a more voluminous production, as well as pretermitting the privacy concerns that would be raised by obtaining emails as to other students. IT IS ORDERED that defendants must produce referral emails for D.D. and E.E., using the same or analogous search parameters as used for the referral emails as to A.A., B.B., and C.C.

Additionally as to RFP 2, Plaintiffs have requested emails within 30 days of each plaintiff's exit or attempted exit from Rowley (i.e., 15 days before and 15 days after),[5] but defendants have not produced those emails. Defendants do not address this issue in their briefing. Moreover, they say they have provided responsive documents for subparts (a) and (b) of RFP 29. The latter of these subsections seeks communications relating to each plaintiff's exit from Rowley. This suggests that defendants have produced emails within the 30 days of each plaintiff's exit. Additionally, in his declaration, Joseph Cipollone states that the Board's IT team ran searches related to the exit dates for each of the plaintiffs and provided the emails to counsel. This also suggests that defendants have produced or intend to produce responsive emails. IT IS ORDERED that to the extent the defendants have not provided emails related to the plaintiffs within 30 days of each plaintiff's exit or attempted exit[6] from Rowley, they shall do so within 14 days.

Further, plaintiffs argue as to RFP 2 that communications *between* the negotiated exit and referral dates are relevant. Defendants do not address this issue with specificity beyond their argument concerning burden. The Court finds that this request is overbroad because it extends to any communications related to the plaintiffs. This will necessarily include irrelevant communications. The Board has recounted the burden of production when limited to time periods of less than 60 days per "referral" period (at total of 426 days as to A.A., B.B., and C.C.).[7] The Court finds that plaintiffs' generic request for emails is not sufficiently tailored and amounts to an overly burdensome fishing expedition. Moreover, plaintiffs have made more specific requests for communications via RFP 29, discussed below. Within the context of those requests, additional

---

[5] It is unclear whether defendants agreed to this production or whether plaintiffs simply requested it during negotiations.

[6] The inclusion of "attempted exit" adds two more 30 day periods, one as to D.D. and one as to E.E. Pl.'s Ex. 12, ECF No. 73-8, at 3-4. It also adds a 30 day period for A.A., but these documents have already been produced as the time period is also referred to as Referral No. 3. Id. at 3.

[7] Pl.'s Ex. 12, ECF No. 73-8, at 5.

production will be required. However, the broad request for any communications related to the plaintiffs between their exit and entry dates is not proportionate with the needs of this case. IT IS ORDERED that communications related to the plaintiffs between their exit and entry dates, except as otherwise ordered produced, are not subject to production.

Plaintiffs also complain as to RFP 2 that defendants produced 280 emails, although their production log listed 354 emails. In response, the Board submits that it offered to produce the emails in PDF as a solution to this technical problem. It vaguely refers to "software limitations" as an explanation for the discrepancy identified by the plaintiffs. The Court finds that the appropriate solution at this stage is for the Board to produce the PDF versions of the emails, and IT IS ORDERED that defendants shall do so. If, after receipt and review of the PDF emails, the plaintiffs can establish good cause for needing these files in native format, the Court will consider ordering the Board undertake further efforts to obtain and produce them in native form.

Turning to Request for Production 29, the first subpart at issue, subpart (c), seeks communications relating to referral of Plaintiffs for an evaluation to determine eligibility for a 504 Plan or IEP. Plaintiffs argue they each have claims for failure to identify under Section 504 and the ADA. Defendants counter that plaintiffs have not alleged any failure to evaluate or determine eligibility for a 504 Plan or IEP. They add that they have provided all evaluations, 504 plans, and IEP documents to the plaintiffs and thus, they argue, there is no dispute as to whether and when plaintiffs were evaluated. Paragraph 64 of the operative complaint alleges that the School Board has a practice of failing to identify children with mental health diagnoses who require an IEP or 504 Plan. ECF. No. 44, Par. 64. As to specific plaintiffs, they allege that AA was not identified as disabled until after placement at Rowley. Id.  Par. 81, They allege that A.A. has challenged the school's failure to implement the IEP. Id.  Par. 91. They allege that the School District failed to

implement B.B.'s 504 Plan by referring her for a Bulletin 1508 special education evaluation or by developing a BIP and that she was not evaluated until June 2023. Id. Par. 108, 120. They allege that C.C. had a 504 Plan from elementary school but that it was not followed when she transferred to Middle School and that she was not evaluated until October 2023 after a request from counsel. Id. Pars. 123-24, 130. They allege that D.D. had an IEP since elementary school, prior to his placement at Rowley for disciplinary offenses. Id. Pars. 133, 135. They allege that E.E. does not currently have an IEP or 504 Plan. Id. Par. 152. But in their causes of action section, they do not appear to have any claims tied to failures to identify plaintiffs as disabled.

Considering that there are no actual claims generating from any failure to evaluate plaintiffs for an IEP or 504 Plan and that defendants have produced all documentation related to the plaintiffs' evaluation, the Court finds that production of communications relating to plaintiffs' referral for evaluation for these programs is not proportionate with the needs of this case. IT IS ORDERED that communications relating to plaintiffs' referral for evaluation for an IEP or 504 Plan are not subject to production.

The next RFP 29 subpart at issue is (d), communications relating to Plaintiffs' Daily Trackers for PBIS (Positive Behavioral Interventions and Supports) at Rowley. Plaintiffs argue that whether a student earns enough behavioral points determines whether the student is permitted to exit Rowley. They argue that whether a student achieved the requisite points but was required to stay at Rowley is relevant. Further, they argue that the presence or lack of accommodations that would permit variation from the behavioral points system for students with disabilities would also be relevant. They submit that the requested communications may contain copies of trackers that they have not received for all students. Defendants respond that plaintiffs have not claimed that a failure to provide daily trackers resulted in a denial of plaintiffs' exits. Defendants say there is no

claim that compliance with the behavioral points system prevented the plaintiffs' exit. Defendants submit that if plaintiffs have a concern about the completeness of education records produced, that should be addressed in the context of the requests for student records, not for communications related to plaintiffs.

Plaintiffs' Complaint alleges that students at Rowley must meet behavioral program requirements to leave Rowley and that these requirements are not subject to accommodations or modifications for students with disabilities. ECF No. 44, Pars. 50, 69. They allege that due to her disabilities, B.B. could not satisfy Rowley's uniform exit criteria. Id. Par. 117. They allege that D.D. wanted to leave Rowley but was told he could not because he had not earned enough behavioral points. Id. Par. 139. In their causes of action section, Plaintiffs allege that Defendants violated the ADA and Section 504 by failing to modify their programs to avoid discrimination against all plaintiffs. Par. 160(e), 169(e).

It appears plaintiffs are asserting a claim concerning the application of behavioral requirements without modification for disability as to B.B. and D.D.[8] The plaintiffs' Daily Trackers are relevant to this issue and they have been produced as part of the plaintiffs' educational file. It is less clear, though, whether communications related to the trackers will provide any more information than what has already been provided in the trackers themselves and in such documents as plaintiffs have themselves. Plaintiffs say that the Rowley Student Parent Handbook requires communications with parents about whether students are meeting expectations for behavior recorded in PBIS. Such communications are in the possession of plaintiffs' parents, who are plaintiffs themselves. Plaintiffs say the emails may contain trackers that are not contained in the education files, but they offer no reason to believe trackers are missing from the educational files

---

[8] Plaintiffs have not alleged any facts that could support such a claim as to A.A., C.C., and E.E., and therefore do not appear to be asserting such a claim as to these plaintiffs.

such that an additional search for emails—with the burdens involved—is warranted here. Thus the only non-duplicative relevant communications would be those in which staff discussed the trackers amongst themselves (to the exclusion of emails that merely forwarded trackers). The Court finds that the burden of a limited production of such emails is justified by the importance such communications could have to the case. IT IS ORDERED that as to B.B. and D.D., defendants shall produce emails between staff members that substantively discuss the trackers during the time these two plaintiffs were at Rowley but only to the extent such time period is within the prescriptive period applicable to each plaintiff's claim. Defendants shall determine the relevant custodians to search based on prior negotiations with the plaintiffs and their knowledge of which staff members might engage in such substantive discussions. Defendants shall not be required to produce similar records as to A.A, C.C., and E.E. because no issue has been raised as to their inability to satisfy the behavioral point system due to their disability.

The next RFP 29 subpart at issue is subpart (e), seeking communications related to Plaintiffs' disciplinary referrals or incidents. Plaintiffs submit that discipline issues are one of the reasons that plaintiffs are not allowed to leave Rowley. They insist they need information about the disciplinary incidents. Defendants argue this request is duplicative of subsection (a) (concerning referral of students to Rowley).

As noted above, plaintiffs allege defendants failed to modify programs as needed to avoid discrimination. Complaint Par.160(e), 169(e). As to plaintiffs B.B. and D.D., they allege that the defendants failed to provide behavioral supports necessitated by their disabilities. Id. Par. 120-21, 134, 136, 139. The Court finds that defendants' communications, if any, regarding documented disciplinary incidents other than those that resulted in referral may be relevant to B.B. and D.D.'s claims of discrimination because these incidents would impact their ability to exit Rowley and

could also reflect the accommodations being provided to address disability related behaviors. Similar behavior related accommodation issues have not been alleged as to A.A., C.C., and E.E. IT IS ORDERED that defendants must produce responsive documents for B.B. and D.D. as to additional documented disciplinary incidents. To reduce the burden related to this production, plaintiffs shall first identify with specificity each "disciplinary incident," and defendants' search for responsive communications shall be limited to those incidents. Additionally, the production shall be limited to the time periods when each B.B. and D.D. was at Rowley and only to the extent such time period is within the prescriptive period applicable to each plaintiff's claim.

The next RFP 29 subpart at issue is subpart (f) seeking communications relating to the development or implementation of an FBA (Functional Behavior Assessment) or BIP (Behavior Intervention Plans) for plaintiffs. Plaintiffs argue that the requested communications are critical to their failure to accommodate claims, which arise out of their claims that they did not receive appropriate behavioral interventions or supports at Rowley. Defendants argue that there are no claims that they failed to provide FBAs or BIPs. They say that there is no dispute as to if and when these plans were provided because they are in the students' educational records that have been produced. As with subsections (e) and (f), the Court finds the requested documents relevant as to B.B. and D.D, but not the remaining plaintiffs for whom disability related behavior issues have not been alleged. The Court finds that communications regarding the FBAs and BIPs may be relevant to the claims of B.B. and D.D. because they may reveal why these assessments and plans were implemented at a particular time and how the plaintiffs' disability was or was not considered. IT IS ORDERED that communications relating to the development or implementation of an FBA or BIP for B.B. and D.D. shall be produced. Additionally, the production shall be limited to the

time periods when each B.B. and D.D. was at Rowley and only to the extent such time period is within the prescriptive period applicable to each plaintiff's claim.

The final RFP 29 subpart at issue is subpart (g) seeking communications between staff and law enforcement relating to plaintiffs. Plaintiffs argue that they have alleged that defendants had a policy and practice of utilizing the juvenile court process to expel students without notice and the opportunity to be heard. ECF No. 44, Par. 182(d). They argue that the requested communications are relevant to the motive behind law enforcement referrals of Plaintiffs. Defendants argue there is no allegation of discriminatory law enforcement in this litigation. They say they have already provided a detailed interrogatory response and underlying communications as to alleged retaliation against A.A. in connection with his juvenile court involvement. The Court finds that this request seeks information relevant to plaintiffs' claim that the district uses the juvenile court process to expel students, and in particular, their allegations as to A.A. It is unclear whether defendants' production of communications is complete. IT IS ORDERED that if they have not already done so, defendants must produce documents between staff and law enforcement related to A.A. Because law enforcement issues have not been plead as to the other plaintiffs, further search for or production communications will not be required as to the others.

Plaintiffs also complain that defendants have not provided information relating to plaintiff D.D. and E.E.'s transfer to Rowley as requested by RFP 29 subsection (a) based on the prescriptive period. This issue was discussed and resolved above as to RFP 2.

Plaintiffs further complain that defendants have not provided information related to plaintiffs A.A., B.B., and C.C. as to their referrals and exits during 2021 and 2022 based on the prescriptive period. They argue that earlier communications will help establish a pattern and practice. The Court finds that further production of referral and exit emails beyond that which has

already been produced or ordered by the Court is not proportionate with the needs of the case. IT IS ORDERED that communications related to related to plaintiffs A.A., B.B., and C.C. as to their referrals and exits during 2021 and 2022 are not subject to production.

c.   *Requests for Production 30, 31, 32, 33, and 36*

Requests for Production 30, 31, 32, 33, and 36 seek information about other students. The first four requests seek information in the aggregate. The last seeks information about specific students, though would allow identifying information to be redacted.

The aggregate requests are as follows. RFP 30 seeks documents showing the number of students referred to Rowley as a result of a disciplinary incident, including those who received an alternate placement/expulsion hearing before a hearing officer outcome, the number of students who completed a waiver form, and the number of students who received an alternate placement/expulsion hearing before the School Board and the outcome. RFP 31 seeks documents showing the number of students who exited Rowley, the length of their placement, the date they exited, and the placement after exiting the program. RFP 32 seeks documents showing the number of students with IEPs and 504 Plans referred to Rowley as a result of a disciplinary incident or placement, the number of students for which a manifestation determination review (MDR) was held and the outcome, and the number of students who were returned to their regular IEP/504 Placement as a result of the MDR. RFP 33 seeks documents sufficient to show the number of students with IEPs and 504 Plans who exited Rowley, the length of placement, the date they exited, and each student's placement after exit.

Defendants object to the request for information about other students as irrelevant. They argue that courts require a clear demonstration of procedural due process violations before considering broader claims such as those plaintiffs are attempting to assert here. Defendants point

out that the Court has already held that information about other students is irrelevant when it denied the plaintiffs' motion to compel IEPs, 405 Plans, discipline records, Edgenuity records and administrative records for students in Plaintiffs' academic classes.

The Court finds that the requested records are relevant to plaintiffs' claimed policy and practice claims alleging due process violations by the use of waivers and the discriminatory placement of students with disabilities at Rowley. Additionally, the Court notes that its previous ruling on Request for Production 22 does not apply equally to Requests 30-33, which seek information that is more clearly connected to plaintiffs' claims and that requires production of aggregated information that does not implicate privacy concerns. Furthermore, at this stage of the litigation, the Court will not weigh the merits of plaintiffs' claims in determining discoverability. IT IS ORDERED that documents responsive to Requests for Production 30-33 must be produced.

RFP 36 seeks daily Session Logs in Edgenuity for all students in Plaintiffs' academic classes sufficient to show the start and stop time as well as idle time for the first Monday, second Tuesday, third Wednesday, fourth Thursday and first Friday of each calendar month in which any plaintiff attended in-person school at Rowley in the 2022-2023 school year or the 2023-2024 school year. This request is similar to Request for Production 22 previously rejected by the Court. But unlike that request, the present is much narrower and does not implicate nearly the entirety of the other students' educational files. The requested records showing start and stop times do not implicate the same privacy concerns as those requested in RFP 22, which sought IEP Plans and disciplinary records. And, importantly, the requested information is tied to plaintiffs' claims that Defendants have a pattern and practice of providing subpar education to the students at Rowley. The time spent by students—including non-plaintiffs—in the computer learning program may bear on that. Moreover, comparison against the experience of non-plaintiff students may also shed light

on whether they were anomalies. IT IS ORDERED that documents responsive to RFP 36 must be produced.

> ### d.   Requests for Production 37 and 39

Requests for Production 37 and 39 seek information about teachers at Rowley. RFP 37 seeks documents to show the dates and times that school employees including teachers, counselors, special education service providers, tutors, and substitute teachers entered or exited the Rowley campus in the 2022-2023 and 2023-2024 school years. RFP 39 seeks documents and communications related to the evaluation and assessment of school personnel for each teacher and administrator at Rowley during the relevant time period. Plaintiffs claim the requested information is relevant to their claims that they received inadequate education. The evaluations will be relevant, they say, to rebut any argument by the Defendants that plaintiffs received qualified instruction.

The Court finds RFP 37 seeks irrelevant information. The mere presence of administrators, teachers, and staff at Rowley does not bear on the quality of information received. There could be any number of reasons for the time of their presence and any number of implications. Moreover, as defendants point out, without comparison to the presence of staff at other schools, the information cannot bear on plaintiffs' claims. Additionally, the information will require a detailed review of records from multiple data sources. The documents implicate privacy issues. Whatever relevance there may be of the requested information is outweighed by the burden of production. IT IS ORDERED that defendants shall not be required to produce documents responsive to RFP 37.

As to RFP 39, defendants argue that the information is irrelevant to determining if plaintiffs were provided with general education at Rowley. Again they argue that without comparison to similar information for other schools, the information will not shed light on whether they received

any lesser quality education that students in other schools. Defendants admit that they have provided resumes and qualifications of the teachers at Rowley, but say they did so as a compromise that should not be held against them.

The Court agrees with the defendants that to the extent the performance reviews reflect the quality of education received by the plaintiffs, the reviews are irrelevant to the issues in this case without comparison to the evaluations of teachers at other St. Bernard schools. Such records have not been requested, and, in any event, the burden of producing the voluminous records of performance reviews across the district outweighs their importance. IT IS ORDERED that defendants shall not be required to produce documents responsive to RFP 39.

<u>Conclusion</u>

For the following reasons, plaintiffs' Second Motion to Compel is GRANTED in part and DENIED in part as follows:

IT IS ORDERED that identification of documents withheld in response to RFP 29 will not be required.

IT IS ORDERED that defendants must produce referral emails for D.D. and E.E., using the same or analogous search parameters as used for the referral emails as to A.A., B.B., and C.C.

IT IS ORDERED that to the extent the defendants have not provided emails within 30 days of each plaintiff's exit or attempted exit from Rowley, they shall do so within 14 days.

IT IS ORDERED that communications related to the plaintiffs between their exit and entry dates, except as otherwise ordered produced, are not subject to production.

IT IS ORDERED that defendants shall produce the PDF versions of the 354 emails listed in their production log.

Case 2:23-cv-02228-BSL-JVM   Document 87   Filed 08/28/24   Page 20 of 21

IT IS ORDERED that communications relating to plaintiffs' referral for evaluation for an IEP or 504 Plan are not subject to production.

IT IS ORDERED that as to B.B. and D.D., defendants shall produce emails between staff members that substantively discuss the trackers during the time these two plaintiffs were at Rowley but only to the extent such time period is within the prescriptive period applicable to each plaintiff's claim.

IT IS ORDERED that defendants must produce responsive documents for B.B. and D.D. as to additional disciplinary incidents, subject to the limits discussed herein.

IT IS ORDERED that communications relating to the development or implementation of an FBA or BIP for plaintiffs B.B. and D.D. shall be produced, subject to the limits discussed herein.

IT IS ORDERED that if they have not already done so, defendants must produce documents between staff and law enforcement related to A.A.

IT IS ORDERED that communications related to plaintiffs A.A., B.B., and C.C. as to their referrals and exits during 2021 and 2022 are not subject to production.

IT IS ORDERED that documents responsive to Requests for Production 30-33 must be produced.

IT IS ORDERED that documents responsive to RFP 36 must be produced.

IT IS ORDERED that defendants shall not be required to produce documents responsive to RFP 37.

IT IS ORDERED that defendants shall not be required to produce documents responsive to RFP 39.

New Orleans, Louisiana, this 28th day of August, 2024.

_____
Janis van Meerveld
United States Magistrate Judge