UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| P.A., on behalf of minor child, A.A., et al. | * | CIVIL ACTION NO. 23-2228 |
| | * | |
| VERSUS | * | SECTION: "O"(1) |
| | * | |
| DORIS VOITIER, et al. | * | JUDGE BRANDON S. LONG |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is Plaintiffs' Second Motion to Compel Discovery. ECF No. 73. This Order and Reasons addresses the privilege issues raised therein. For the following reasons, the Motion is GRANTED in part and DENIED in part. As discussed further herein, as to certain communications, defendants must either remove their privilege designations or supplement their privilege log within seven days. As to other communications, defendants must produce them for in camera review. And as to others, defendants have established a privilege and no further action will be required. One email must be produced to plaintiffs, and another must be produced with fewer redactions. Issues related to relevance and proportionality were addressed via a separate Order and Reasons.

Background

Plaintiffs in this lawsuit are five public school students in St. Bernard Parish with alleged mental/cognitive disabilities under the Americans with Disabilities Act, Section 504. They challenge the St. Bernard Parish School Board's practice of sending expelled students in grades 6 through 12 to C.F. Rowley Alternative School ("Rowley") as violative of the ADA, Section 504 of the Rehabilitation Act of 1973, procedural and due process under the United States and Louisiana Constitutions, disciplinary safeguards under state law, and the Louisiana Human Rights Act.

1

Plaintiffs, proceeding under pseudonyms to protect their privacy, assert their claims against the School Board and Doris Voitier in her official capacity as superintendent for the St. Bernard Parish Public Schools. Trial is set to begin on April 7, 2025. The discovery deadline is January 22, 2025. The Parish's Motion for Judgment on the Pleadings, filed in February 2024, remains pending before the District Judge.

The current discovery motion concerns the defendants' discovery responses. Issues concerning the sufficiency of defendants' production and their relevance and undue burden objections to certain requests for production are addressed by a separate Order and Reasons. The present Order and Reasons concerns the plaintiffs' challenge to the defendants' privilege assertions over certain email and text message communications.

<u>Law and Analysis</u>

1. *Attorney Client Privilege*

"[T]he attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice." <u>Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.</u>, 768 F.2d 719, 720 (5th Cir. 1985). The purpose of the privilege:

> is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

<u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981). For a communication to be protected under the privilege, the proponent "must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." <u>United States v. Robinson</u>, 121 F.3d 971, 974 (5th Cir. 1997) (emphasis in original). Communications by the lawyer to the client are protected

"if they would tend to disclose the client's confidential communications." <u>Hodges</u>, 768 F.2d at 720. "The burden of demonstrating the applicability of the privilege rests on the party who invokes it." <u>Id.</u>

    *2.   Work Product Doctrine*

       The work-product doctrine protects from discovery documents and tangible things "prepared by an attorney 'acting for his client in anticipation of litigation.'" <u>United States v. Nobles</u>, 422 U.S. 225, 238 (1975) (quoting <u>Hickman v. Taylor</u>, 329 U.S. 495, 508 (1947)). Codified at Federal Rule of Civil Procedure 26(b)(3), the work-product protection extends to materials prepared by the party itself and representatives other than attorneys. It applies to the work product whether prepared in anticipation of a civil or criminal trial. <u>See</u> <u>Nobles</u>, 422 U.S. at 238. As with the attorney-client privilege, the party asserting the work product doctrine bears the burden of proving it applies. <u>Hodges</u>, 768 F.2d at 721.

       If the party resisting discovery establishes that the materials are work product, the party seeking discovery can only obtain the documents if they are relevant and proportional to the needs of the case and "it has substantial need for the materials to prepare its case and that it cannot, without undue hardship, obtain the substantial equivalent of the materials by other means." Fed. R. Civ. Proc. 26(b)(3)(A); <u>see</u> <u>Lassere v. Carroll</u>, No. CIV.A. 13-5430, 2014 WL 7139138, at *4 (E.D. La. Dec. 15, 2014). "[T]he burden of showing that the materials that constitute work product should nonetheless be disclosed is on the party who seeks their production." <u>Hodges</u>, 768 F.2d at 721. "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." <u>United States v. Campos</u>, 20 F.3d 1171 (5th Cir. 1994) (quoting <u>Nobles</u>, 422 U.S. at 238) (alteration omitted). Thus, even when a party shows it has substantial need for the materials, the court "must protect against

disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. Proc. 26(b)(3)(B). Such materials are known as "opinion work product."

3. *Demonstrating the Privilege – Privilege Logs and Redactions*

When documents are withheld as privileged or protected as trial-preparation materials, Federal Rule of Civil Procedure 26(b)(5)(A) requires that the party invoking the privilege "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Traditionally, parties have met this burden by creating a privilege log listing each document withheld and identifying basic information like the author, recipient, date, and general nature of the document. E.g., Benson v. Rosenthal, No. CV 15-782, 2016 WL 1046126, at *9 (E.D. La. Mar. 16, 2016). But the Federal Rules do not impose a particular requirement, with the committee observing in 1993 that  "[d]etails concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories." Fed. R. Civ. P. 26 advisory committee notes to 1993 Amendment; see In re Imperial Corp. of Am., 174 F.R.D. 475, 477 (S.D. Cal. 1997). Categorical logs, meta data logs, and production of redacted documents in lieu of a privilege log may be appropriate, depending on the case and documents at issue. See The Sedona Conference, Commentary on Privilege Logs, 25 SEDONA CONF. J. 221 (forthcoming 2024) (discussing methods to more efficiently establish that a privilege applies). For example, the Commentary on Privilege Logs suggests that where only the privileged portion of an email is redacted but other parts of the communication, along with the

4

email sender, recipients, date, and subject, are visible, the redacting party may have provided sufficient information to establish the privilege invoked. Id. at 276-78.

Of course, both sides of any privilege dispute must recognize that even when the usual information is provided on a document by document basis, the balance between providing enough information about the document and the basis for the privilege without revealing the privileged communication itself is difficult to strike. Nonetheless, it remains the privilege-invoking party's burden to establish that the privilege applies. Hodges, 768 F.2d at 720-21; see Est. of Manship v. United States, 232 F.R.D. 552, 561 (M.D. La. 2005), aff'd, (M.D. La. Jan. 13, 2006) ("Even if describing the protected materials in a log may be difficult to do without revealing the confidential nature of the documents, it is nevertheless the obligation of the United States under Fed.R.Civ.P. 26(b)(5).").

4.   *Documents at Issue*

a.   *Communications with the District Attorney's Office*

Defendants have marked seven emails between school district employees and the St. Bernard Parish District Attorney's office (the "DA") as privileged. The emails are dated August 31, 2022, or September 1, 2022. Four are from Voitier to district attorney Perry Nicosia with the subject "Meeting with Attorney" or "RE: Meeting with Attorney" and three are from Nicosia to Voitier with a copy to Lance Licciardi with the subject "RE: Meeting with Attorney." See Pl.'s Exs. 3 & 5, ECF No. 73-15, 73-19. Defendants invoke both the attorney client and attorney work product privilege. They contend that the DA serves as general counsel for the District.

Plaintiffs contend this cannot be so because by statute, "the employment of an attorney by any city or parish school board shall relieve the district attorney of the judicial district serving such city or parish school board from any further duty of representing such school board." La. Rev. Stat.

§ 16:2(B). They point out that at the time of the communications at issue, the Board had already retained private attorneys. They also argue the DA can only serve as counsel for parish school boards, but  Voitier is merely a school district employee, not the school board itself. Further, plaintiffs argue that the subject line of the email "Meeting with Attorney" is insufficient to establish that the communication is privileged.

The defendants respond that the DA is only relieved from its duties as general counsel if the school board retains "its own attorney to represent it generally." Id.  Here, though, they insist that the school board retained private counsel to represent it as special counsel pursuant to La. Rev. Stat. § 42:262-263 as to specific matters, not generally. They argue that the cited provision does not apply. Further, they argue that Voitier is the Superintendent of the school district and clearly authorized by the School Board that hired her to serve as the top administrator of the district, and that the district is in the best position to know who its counsel is. They argue that the DA as general counsel for the School Board can engage in privileged communications with the Board through the Superintendent and other District administrators and employees. The defendants argue further that the subject line is sufficient to establish the privilege and that revealing more would reveal the privileged communication itself.

In reply, plaintiffs cite an Attorney General Opinion holding that when a school board hires special counsel, the DA is relieved of their duties as to the scope of the matters covered by the resolution authorizing the retention of special counsel. La. Att'y Gen. Op. No. 16-0003 (Dec. 6, 2016). They argue that based on this ruling, the Board's hiring of outside counsel prevented the DA from serving as general counsel as to the issues in this case. They argue that defendants have not shown how the legal advice in the emails withheld concerns general counsel subject matter as opposed to subject matter within the scope of outside counsel's representation. They point to

6

A.A.'s allegations that the Board participated in his delinquency adjudication in a manner that constitutes prohibited retaliation.

First, the Court finds that in this case, the DA may very well have been acting as general counsel for the School Board, communicating with its representative—the Superintendent. The Attorney General opinion cited by plaintiffs applied in the context of a question of whether the DA could be guilty of malfeasance and gross conduct for failing to satisfy their duties to act as general counsel. It does not extend to a case like this, where the defendants contend that they did in fact communicate with the DA to seek legal advice. If the DA acted as general counsel even though they were not obligated to do so by statute, the Court finds that an attorney-client relationship may well have existed.

But, in light of A.A.'s claims that the defendants improperly interfered with his delinquency adjudication, the Court finds that there is a question as to whether the communications involved a client requesting and an attorney providing legal advice, or whether instead they concern the school board's involvement as an interested party in A.A.'s delinquency adjudication. This is especially so when, as plaintiffs point out, one of the attorneys on two of the communications is listed as a prosecutor, suggesting that he may not serve in a role of providing legal advice to school boards. The privilege log offers no clarity on the subject matter of the emails. The subject line that has been disclosed is merely "Meeting with Attorney."

Given the nature of the alleged privilege and the importance of understanding the subject matter of the communication to determine its applicability, defendants shall be required to produce these four emails for *in camera* review.

b.   *Communications with Non-Employee Psychologist*

Defendants list 15 emails on their privilege log between school district employees and Sarah Fletcher, an employee of Young Cypress Psychology. These emails are dated February 15, 2022,  August 29, 2022, September 6, 2022, September 7, 2022, September 9, 2022, September 12, 2022, April 27, 2023, and May 12, 2023. Fletcher is sender on some emails and recipient on others. In some emails, there are other recipients. An attorney is only included in six of the emails at issue. The subject lines for all but two are detailed, referring to a mandatory request for expedited due process hearing for a particular plaintiff. But three are more generic:  one has the subject line "Re: evals," another "Fwd: Exhibits," and a third "Fw: Evaluation Meeting."

Plaintiffs argue that because Fletcher is not a school district employee, any privilege over the communications has been waived. Further, they argue that the emails do not provide enough information to determine that a privilege exists, especially as to the emails without an attorney. They argue that even where an attorney was eventually included on carbon copy in the email thread, this is not enough to make the entire thread privileged.

Defendants argue that disclosure of attorney advice to Fletcher is not akin to accidental disclosures or disclosures to parties with adverse interests. They also argue that there is no waiver if communications are disclosed to a third party with a common legal interest. They argue there is no waiver here because Fletcher is not someone who has acted on behalf of adverse parties. They argue further that subject lines, dates, senders, and recipients are sufficient to establish the privilege.

First, the court finds the common interest privilege cited by the defendants is inapplicable here. That privilege applies "where more than one person seeks consultation with an attorney on a matter of common interest." In re Auclair, 961 F.2d 65, 70 (5th Cir. 1992). The court of appeals in

Auclair reasoned that in the pre-representation phase, the existence of a matter of common interest must be presumed. Id. The concerns driving Auclair are not at play here.

Nonetheless, the court observes that other courts "have found that the attorney-client privilege can extend to communications between the attorney and an independent contractor of the client." Burroughs Diesel, Inc. v. Baker Petrolite, LLC, No. 2:18-CV-26-KS-MTP, 2018 WL 6517454, at *5 n. 3 (S.D. Miss. Dec. 11, 2018) (citing cases). Courts recognizing such an extension typically ask whether the third party was the functional equivalent of an employee. See LG Elecs. U.S.A., Inc. v. Whirlpool Corp., 661 F. Supp. 2d 958, 961 (N.D. Ill. 2009). For example, the Southern District of New York considers "whether the consultant had primary responsibility for a key corporate job, whether there was a continuous and close working relationship between the consultant and the company's principals on matters critical to the company's position in litigation, and whether the consultant is likely to possess information possessed by no one else at the company." Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co., 232 F.R.D. 103, 113 (S.D.N.Y. 2005).

In a declaration submitted with defendants' opposition, it is represented that Dr. Fletcher is a psychologist that contracts with the District to assist with special education evaluations and assessments. The Court finds that in her role as psychologist, she was acting as the functional equivalent of an employee of the defendants. For purposes of assessing the privilege, the Court will consider her as an employee, not an outside third party.

Next, the Court considers the information provided in the privilege log. The defendants have not established that the 2023 email with the subject "Re:evals" is privileged. There is no attorney on the emails. There is no indication the email is a forward of an email involving an attorney or an email forwarded to an attorney. And the subject line is too vague to meaningfully

identify whether the communication might be privileged. Presumably in her role as psychologist, Fletcher is involved in communications concerning evaluations and evaluation meetings that have no legal advice component. Defendants will be allowed an opportunity to supplement their privilege log to provide further information supporting their claim that these emails contain legal advice or provide information for an attorney to assist with providing legal advice.

The Defendants have established that the 2023 email with the subject line "Fwd: Exhibits" and the 2022 email with the subject line "Fw: Evaluation Meeting" is privileged. Although these emails do not include an attorney, it is clear that the immediately preceding email was privileged. Each preceding email has the same subject line and was sent from outside counsel to the same school district employee that forwarded the email to Fletcher. These emails are privileged and are not subject to production.

The next emails at issue are six emails dated August 29, 2022: two are from Keith Cheramie to Fletcher, two are from Fletcher to Cheramie, and two are from Cheramie to a long list of staff and Fletcher with a carbon copy to attorney Wayne Stewart; one email dated September 6, 2022, from Fletcher to Chearmie; one email dated September 7, 2022,  from Cheramie to Fletcher; and two emails email dated September 9, 2022, and September 12, 2022, each from Cheramie to a long list of staff including Fletcher with a copy to Stewart. All have the same subject line "Mandatory Request for Expedited Due Process Hearing" with reference to the same plaintiff. There are numerous other emails on the same dates and with the same subject line listed on the privilege logs (with at least ten on August 29 alone between Cheramie and attorney Stewart that plaintiffs are not challenging, and another group of at least twenty on August 29 between non-attorney staff that plaintiffs are challenging (and which are addressed below)). Defendants say that the privilege log shows that the initial conversation originated with an email between a District administrator and

10

counsel. But the privilege log does not make clear that every single email following the purported "original" email responds to or forwards the original email with counsel. The log contains no time stamps to show the actual order of the emails. The log contains no narrative explaining the relationship between the emails (e.g., is the email forwarding legal advice from Stewart? discussing implementation of legal advice from Stewart? responding to a request for information by Stewart?). Considering the volume of emails at issue, it is not reasonable for plaintiffs' counsel or the Court to assume that over 70 emails with varying combinations of senders and recipients (including the four with Fletcher copied) pertain to the same original attorney advice based up on the subject line alone. This is especially true where it is entirely possible that non-attorney staff and contractors might be discussing the same subject (the request for a due process hearing) in the ordinary course of business and without reference to legal advice. It is possible that non-attorneys have begun non-legal discussions using the same email chain that contained legal advice—in this situation, redaction of the legal advice and production of the non-legal discussion may be appropriate. Defendants will be allowed one final opportunity to revise their privilege log to provide additional information about the relationship between the allegedly privileged emails and the emails for which privilege has been established (i.e., those between a staff member and outside counsel).

   c.   *Communications Among School District Employees*

      Plaintiffs have identified 67 emails between non-attorney school staff members. The vast majority of these emails contain the same "Mandatory Request for Expedited Due Process Hearing" subject line discussed above in subsection (b). For the same reasons discussed above, the Court will allow defendants a final opportunity to revise their privilege log.

Next, there is a November 23, 2021, email from Cheramie to Voitier with the subject line "Fw: Demand Letter to SBSB of Nov. 9, 2021 re:" the initials of one of the plaintiffs. The immediately preceding email on the log is dated November 22, 2021, with the same subject line and is sent from attorney Stewart to Cheramie. The Court finds it clear that Cheramie's email is a forward of a privileged attorney communication regarding a demand. Defendants have established the applicability of the attorney-client privilege.

There is also an email dated February 14, 2022, from Cheramie to Ben Yvonne with a copy to Alison Gros with the subject line "Fw: Evaluation Meeting." The next three emails have the same subject line and the same date and are between Stewart and Cheramie. The Court finds that without a time stamp or any information about the relationship between these emails and considering that it appears that an email with counsel did not initiate the chain, it is not possible to conclude that the initial email amounts to a request for legal advice or the provision of information to counsel to facilitate legal advice. Defendants will be allowed to supplement their privilege log as to this email.

The next four emails are dated September 20, 2022, and have the subject line "Re: FBA." Each is from Gros to Cheramie with a copy to attorney Stewart. There are no surrounding emails directly to or from Stewart with the same date or subject line, although a privileged September 19, 2022, email from Cheramie to Stewart has the subject line "Fw:  FBA Permission Form." Of note, the initials FBA appear to refer to a Functional Behavior Assessment. It may be that—even though Stewart is only copied—the four emails contain a privileged request for legal advice related to the September 19 email or they may provide follow up information related to the September 19 request for advice. But the nature of an FBA does not, on its face, suggest that the parties would be requesting or providing legal advice, and a copy to counsel is not the same as an email addressed

directly to counsel. The Court finds that defendants' privilege log is insufficient to establish a privilege. Defendants will be allowed a final opportunity to support the existence of a privilege by supplementing their privilege log with additional information about the content of the email.

The next two emails in this category are dated March 14, 2023, and have the subject line "Fw: [plaintiff's initials] IEP." Although categorized as emails, they appear to be both to and from Cipollone. There is no preceding email from attorney Stewart to Cipollone with the same subject line that would suggest the two emails are forwards of legal advice Stewart had provided. A subsequent email dated March 15, 2023, from Cipollone to Stewart has the subject line "Re: IEP Team for [plaintiff A.A.'s initials]." As with the FBA, an IEP does not, on its face, suggest a legal component. It is possible that the two emails are draft requests for legal advice that Cipollone sent to himself. Perhaps there are two staff members named Joseph Cipollone and they are crafting a request for legal advice to be sent to counsel. It may also be that defendants are actually relying on the work product doctrine (although litigation was not initiated until June 2023) and that this email reflects work product in anticipation of litigation because of some other trigger. But defendants have not made these representations or offered any other explanation for how these emails, which merely reference an IEP, do not include an attorney, and were created before litigation was initiated, are privileged. Defendants will be allowed an opportunity to supplement their privilege log.

The next two emails are dated March 16, 2023, and March 17, 2023, with the subject line "Fw: Students [plaintiff A.A.] and [redacted]." Both are from Joshua Petit. One has no recipient. The other is sent to Jessica Janneck and Lynda Rost. An email dated March 16, 2023, from Kenna Vancourt with the DA to Petit, Kelsey Billiot, and Robert Patchus contains the subject line "Students [plaintiff A.A.] and [redacted]," and plaintiffs appear to agree that this latter email is

privileged. The Court is satisfied that the March 17 email that appears to reflect Petit forwarding the privileged email, is also privileged. The March 16 email, though, contains no time stamp and no recipient. It is unclear whether it was drafted before or after the privileged email and whether it concerns a legal matter at all. Defendants will be allowed to supplement their privilege log as to the March 16 email.

The next email is dated May 31, 2023, with the subject line "Prior Notice." It is from Cipollone to Emily Breaux. The immediately preceding email on the log is dated May 31, 2023, from Cipollone to Stewart with the subject line "[plaintiff A.A.'s initials] Eval and Prior Notice." The immediately subsequent email has the same date and the subject line Re: [plaintiff A.A.'s initials] Eval and Prior Notice." Considering that the preceding email concerning legal advice and has a similar subject line, the Court is satisfied that the May 31, 2023, email is privileged.

The final email in this group is dated September 21, 2023, and is from Andrea Licciardi to Voitier and has the subject line "Fw: Notice of Representation at Expulsion Hearing for [plaintiff C.C.'s initials] and Request for Records." There are four emails on the privilege log dated September 20, 2023, that are between Andrea Licciardi and attorney Stewart with the same subject line. Further, representation at an expulsion hearing suggests a legal matter. Additionally, the email is dated after this litigation was initiated. The Court finds sufficient information to conclude that the September 21 email is a forward of legal advice. The email is privileged and not subject to production.

There are also four text messages between staff that plaintiffs challenge. One is dated August 30, 2023, from Cipillone to Voitier; the next is dated March 8, 2023, from Mary Lumetta to Voitier; the next is dated May 1, 2023, from Cipillone to Voitier; and the fourth is dated April 17, 2023, from Cipillone to Voitier and Lumetta. These text messages were not listed on a privilege

log, but were instead produced as redacted screenshots. Each redaction includes a comment that the message was passing along a privileged message of counsel. The Court finds that further explanation is required. Which attorney provided the advice (outside counsel or the DA)? Did the advice concern the present litigation? A hearing? Defendant's statutory/regulatory obligations? Defendants need not identify the advice precisely and they should obviously avoid sharing the advice itself, but they must provide something more where there is no attorney involved in the communication. They will be allowed to supplement their privilege log to provide additional information regarding these text messages.

> ### d. Redactions

Plaintiffs separately challenge other redacted production by the defendants. Specifically, they challenge the redacted email at P.A. 9842. The date, sender, and recipient have all been redacted from this email, along with the body of the email, leaving only the signature block of Chalmette High School Assistant Principal Will Schneider. Apparently defendants have produced this email with fewer redactions at RFP20583, but no party has indicated to the Court where to locate that version of the document. Defendants' explanation for the redaction is that the email has private information. The version of the email at P.A. 9842 is over-redacted and provides less information than would be provided on a privilege log. At a minimum, the sender, recipients, the date, and the subject line (unless the subject line reveals a confidential communication) must be unredacted. For the redaction to have any benefit over a privilege log entry, it must reveal non-privileged portions of the communication.  While redaction of non-plaintiff student name and identifying information may be appropriate,[1] it is unclear why the entire body of the email could

---

[1] Plaintiffs elsewhere argue that the defendants do not need to take the precaution of redacting student names because there is a protective order limiting disclosure in this case. However, because the identity of the other students is irrelevant, if defendants wish to undertake this additional burden to provide the heightened protection of redaction over the protective order, they will be allowed to do so. A protective order is a useful tool. But it is not bullet proof.

be considered "private information." The Court adds that it does not appear that a privilege (e.g., attorney-client, work product) is being raised as to this document. Presumably, then, it contains relevant and discoverable information.[2] Defendants must produce this document with minimal redactions of ONLY protected and non-relevant information. If issues remain following production, plaintiffs may contact the chambers of the undersigned to request a status conference.

Plaintiffs next reference the Voitier text messages. For all but three, defendants produced the text messages as they appeared in response to a search (i.e., showing only the text messages with the search terms which may have months of time between them as opposed to showing the surrounding text messages that are near in time to the responsive text message). Defendants did not list these text messages on a privilege log, but instead produced the screen shots with embedded comments as to the basis for the redaction. Following a status conference with the undersigned, the defendants provided supplemental information about the basis for the redactions, but plaintiffs argue there is still insufficient information to establish a privilege. First, as to any text messages that have only been produced in "search" format (i.e., without near-in-time messages), defendants shall supplement their production to include the near-in-time messages (if any) that reflect the context of the redacted message. Next, defendants shall be required to produce the text messages, without redactions, for *in camera* review.[3]

---

Accidents happen. Protective orders have been violated. Data storage systems may be breached. Where the redacted information is entitled to protection (e.g., under the Family Educational Rights and Privacy Act) and is irrelevant to the issues in this case, where the redactions do not obfuscate the relevant information in the document, and where the defendants willingly undertake the burden of redaction without invoking this burden to limit further discovery or seeking to shift costs, they may do so.

[2] To the extent this document is privileged, the privilege must be asserted with specificity and, if necessary, with additional explanation.

[3] Defendants shall highlight for the Court the allegedly privileged text.

Conclusion

For the reasons discussed above, defendants have established a privilege as to some of the withheld communications. As to the remainder, there is a suggestion of privilege but the information provided is insufficient. As discussed herein, some must be produced for *in camera* review. *In camera* production shall be made within **seven days**. For the majority, though, the Court has found that defendants will be allowed to supplement their privilege log with additional information. To the extent they seek to maintain their privilege objection, they shall provide a supplemental privilege log as to the cited entries within **seven days**. Thereafter, the plaintiffs shall determine whether they are satisfied that the privilege applies. If they are dissatisfied, they shall notify the Court by providing the Court with a copy of the log and requesting the Court's determination of the sufficiency.

New Orleans, Louisiana, this 28th day of August, 2024.

Janis van Meerveld
United States Magistrate Judge